## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARIBETH COFFEY-SEARS,       )
                              )
          Plaintiff,          )
                              )       No. 15-cv-08642
      v.                     )
                              )       Judge Andrea R. Wood
LYONS TOWNSHIP HIGH SCHOOL  )
DISTRICT 204,             )
                              )
          Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiff Maribeth Coffey-Sears brought this lawsuit against her employer, Lyons Township High School District 204 ("District"), alleging that the District violated the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 120101 *et seq.*, by discriminating against her and subjecting her to a hostile work environment because of her disabilities: diabetes and fibromyalgia. The District has moved for summary judgment on all of Coffey-Sears's claims. The Court grants that motion for the reasons that follow.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed or have been deemed admitted. Plaintiff Coffey-Sears is an art teacher for Lyons Township High School District 204, a public high school in the western suburbs of Chicago. (Pl.'s Resp. Def.'s Stmt. Undisputed Facts ("PRDSUF") ¶¶ 1, 2, Dkt. No. 29.) The District operates two campuses, the North Campus located in LaGrange and the South Campus located in Western Springs. (*Id.* ¶ 1.) Coffey-Sears started at the District in 1991 and eventually earned tenure. (*Id.* ¶ 2.) At issue in this lawsuit is the school's accommodation of and response to Coffey-Sears's disabilities.

Born with diabetes, Coffey-Sears did not present any metabolic or diabetic symptoms from this disease until her fourth pregnancy in 2005. (App. of Exs. Supp. Def.'s Mot. Summ. J. ("AESDMS") Ex. 2, Dkt. No. 27-2 at 4 of 110.) Her diabetic symptoms include hypoglycemic episodes, which Coffey-Sears can avoid by eating at specific times. Coffey-Sears also suffers from fibromyalgia, which causes her to experience chronic pain and balances issues. (*Id.*) As a result of these symptoms, Coffey-Sears has trouble walking and standing for more than an hour. She uses a wheelchair for activities that require travelling long distances on foot. (*Id.*)

## I.    Facts Regarding Coffey-Sears's Accommodation Requests

### A.    Early Lunch

The conduct at issue in this complaint began in 2013. The earliest incident alleged in the lawsuit occurred on May 6, 2013, when the Chair of the Fine Arts Division, Nicholas Gehl, emailed the draft master schedule to the school's art teachers. (PRDSUF ¶ 7.) The original 2013-2014 schedule had Coffey-Sears taking lunch at eighth period. (AESDMS Ex. 10, Dkt. No. 27-4 at 5 of 77.) Coffey-Sears immediately emailed Gehl back and told him that the eighth period lunch would not work because her medication did not allow her to go for long periods of time between meals. (*Id.*) Gehl responded the next day and told Coffey-Sears the school could accommodate an earlier lunch for her but would require a note from her doctor prescribing this accommodation. (*Id.* at 4 of 77.) Coffey-Sears complained that this was unnecessary since she had already provided a note from her doctor regarding this request several years ago. (PRDSUF ¶ 10.) As such, Coffey-Sears told Gehl that she was not obligated to provide the district with this material again. (AESDMS Ex. 10, Dkt. No. 27-4 at 4 of 77.) The issue was escalated to Edward Piotrowski, the District's Director of Human Resources, who had an in-person meeting with Coffey-Sears. (PRDSUF ¶ 12.)

On May 14, 2013, the same day Piotrowski met with Coffey-Sears, he received a letter from her doctor stating that she required "[l]unch by noon or earlier." (*Id.* ¶ 13.) A couple of days later, Piotrowski received a letter from a different physician asking that Coffey-Sears be permitted to eat lunch within four or five hours after breakfast due to her diabetes. (*Id.* ¶ 14.) Piotrowski asked Coffey-Sears for further information about these accommodation requests. Shortly thereafter, one of Coffey-Sears's doctors sent a letter explaining the requested accommodations. (*Id.* ¶ 15.)

With all medical documentation accounted for, the District made the requested change to Coffey-Sears's schedule. On May 29, 2013, Gehl sent Coffey-Sears an email confirming the adjustment. (*Id.* ¶ 16.) Coffey-Sears responded, stating that the schedule looked good, except for the fact that she only had a single-period for lunch first-semester. Coffey-Sears expressed concern about getting from her classroom to the lunchroom and negotiating lines at the lunch counter in one period. But she stated that they could "wait and see and make adjustments at that time, or discuss being proactive and changing that now." (*Id.*) On May 31, 2013, Piotrowski met with Coffey-Sears to discuss a number of her accommodation requests, including the extended lunch period. Piotrowski told Coffey-Sears that her doctors' notes did not reference the need for an extended lunch, and she would need to provide further documentation to that effect if she required that accommodation. (*Id.* ¶ 17.)

After the schedule was changed to accommodate an earlier lunch for Coffey-Sears, other art teachers started making comments blaming her for issues resulting from the schedule change. One teacher, Carlene Kinzie, told Coffey-Sears, "Our schedules are changed, we don't know what rooms we are going to be in, what order, if we're teaching this class or that class. Why do they have to be changed for you?" (*Id.* ¶ 69.) Lorena Logis asked her, "Well, why is this

happening?" Coffey-Sears believed Logis was upset with her because Logis's voice got louder. Another teacher, Mary Rohlicek, expressed frustration with the changes and concern about materials being delivered on time. Later, at the beginning of the 2013-2014 school year, Matt Brod made statements to Coffey-Sears in relation to her changed lunch period such as, "Everything centers around you. Why should it be that way?" (*Id.*) Notably, Kinzie continued to make comments throughout the 2013-2014 school year, and beyond, about how Coffey-Sears's accommodation requests would affect other teachers and the department. (*Id.* ¶ 71.)

      **B.**    **Restroom Access**

      In addition to an earlier lunch, Coffey-Sears's physician also requested she be able "to use the restroom intermittently and at short notice throughout the day." (*Id.* ¶ 13.) Piotrowski was amenable to meeting this request, but noted "the need for continuous supervision of students" and informed Coffey-Sears "that leaving the class at any time, and leaving students unsupervised, is not something that we can allow." (AESDMS Ex. 16, Dkt. No. 27-4.) Coffey-Sears agreed to provide coverage with the front desk should she need to use the restroom in the middle of class. (PRDSUF ¶ 18.) During the 2013-2014 school year, Coffey-Sears had to leave her classroom to use the restroom about once a month. On each of these occasions, she was able to have another staff member supervise her classroom while she used the facilities. (*Id.* ¶ 19.) Because Coffey-Sears never told Piotrowski that this arrangement was not working out, he believed that she was satisfied with the District's response. (*Id.* ¶ 20.)

      As it turns out, however, Coffey-Sears was not satisfied with this arrangement. Specifically, the location of the women's restroom proved challenging for Coffey-Sears. Her classroom was in the basement and whenever she needed to use the restroom, she had to go to the first floor women's room. (AESDMS Ex. 1, Dkt. No. 27-1 at p. 102.) In order to avoid

navigating the stairs and distance required to get to the women's restroom, Coffey-Sears asked that the District allow her to use a restroom located in the foyer of the building. This restroom had been shut down in 2010 due to maintenance costs and the fact that it was not wheelchair accessible. (PRDSUF ¶ 21.) Alternatively, Coffey-Sears requested to use the men's restroom near her assigned classroom. (*Id.* ¶ 22.) Ultimately, Coffey-Sears did not end up using either of these restrooms.

### C.      Buildings and Grounds Team

Sometime over the summer of 2013, Coffey-Sears sent a note to the District's Buildings and Grounds team asking that they make some adjustments to her classroom. (AESDMS Ex. 17, Dkt. No. 27-4.) The changes were primarily to allow her to use her wheelchair in the classroom and to limit the amount of walking needed to reach critical areas of the classroom. (PRDSUF ¶ 28.) Piotrowski was contacted about this request and emailed Coffey-Sears to confirm that Buildings and Grounds would accommodate any moves. (*Id.* ¶ 30.) On August 17, 2013, the Saturday before the first day of school, Coffey-Sears went to her classroom and found that it had not been changed per her request. (*Id.* ¶ 31.) When she discovered this, Coffey-Sears went to an unidentified person, whom she believes was the lead building foreman, and asked for help rearranging her room. The man told Coffey-Sears that the Buildings and Grounds staff were busy with other jobs and would not be able to assist her at that time. Since school was going to start that Monday, August, 19, 2013, Coffey-Sears got her husband and son to help her rearrange the room. (*Id.*)

### D.      Handicap Parking

The following week, on August 20, 2013, Coffey-Sears sent an email to Piotrowski regarding handicap parking at the school. (*Id.* ¶ 23.) According to that email, Coffey-Sears spoke

to an unnamed secretary about her handicap parking sticker, which she was in the process of

obtaining. The secretary informed Coffey-Sears that the school had more people in need of

handicap parking spots than spots available. The secretary did, however, assign Coffey-Sears a

parking space. She also warned Coffey-Sears that the assigned spot was "too far from the

building," and said if Coffey-Sears wanted a closer option she would have to "simply arrive

earlier." (*Id.*) Coffey-Sears stated that she wanted to bring this to Piotrowski's attention in hopes

that "perhaps data could be collected to re-evaluate the increased need[]" for handicap parking.

(AESDMS Ex. 18, Dkt. No. 27-4.) Coffey-Sears specifically told Piotrowski not to "interpret this

email as a necessity to meet," but just as an informative message. (*Id.*) During the rest of the

2013-2014 school year, Coffey-Sears never advised Piotrowski that the she was having difficulty

finding parking close enough to the building. (PRDSUF ¶ 25.)

      **E.**      **Classroom Observation**

      Several months later, then-Interim Fine Arts Division Chair Sam Robinson conducted a

classroom observation of Coffey-Sears. (*Id.* ¶ 34.) On October 18, 2013, Robinson sent Coffey-

Sears his feedback from the unannounced observation. (AESDMS Ex. 21, Dkt. No. 27-4 at 37 of

77.) The report includes a brief summary of Robinson's observations, followed by positive

observations and suggestions for improvement. (*Id.* at 38–39 of 77.) In the suggestions for

improvement section, Robinson states:

> You remained at your computer for approximately 20 minutes. As a result, you were
> unable to observe several groups of students who were in many different areas of the
> room. Please monitor students by varying your position in the classroom as much as
> possible.

(*Id.* at 39 of 77.) Coffey-Sears objected to this criticism, alleging that her mobility issues

prevented her from moving about the classroom. (PRDSUF ¶ 37.) In response to this objection,

the District revised the assessment by replacing the sentence "Please monitor students by varying

your position in the classroom as much as possible" with "Please think of effective strategies to monitor students." (*Id.*)

**F.      Sick Bank**

Health issues seem to have plagued Coffey-Sears throughout the first-half of the 2013-2014 school year. Indeed, by December 31, 2014, Coffey-Sears had exhausted all of her available sick days, as well as 3.9 days beyond her available balance. (*Id.* ¶ 41.) Accordingly, on January 27, 2015, the District notified Coffey-Sears that it would deduct 3.9 days from her salary over four payroll periods. (*Id.*) Coffey-Sears replied to this email, stating that she assumed the 3.9 extra days would be covered by the Sick Bank or some other accommodation. (*Id.*) The Sick Bank is a contractually-provided benefit, which allows participating teachers to draw from the Bank once they have depleted their own sick days and been on unpaid status for five school days due to a "catastrophic illness." (*Id.* ¶ 39.) Piotrowski explained to Coffey-Sears, via email, that she was not eligible to use the Sick Bank because she had neither met the qualifications nor submitted the proper paperwork. (*Id.* ¶ 42.) Although not eligible to use the Sick Bank, Coffey-Sears nonetheless asked Piotrowski for additional paid sick days as a reasonable accommodation for her medical condition. (*Id.* ¶ 43.) The District did not provide Coffey-Sears with any additional paid sick days.

**G.      Matt Brod Dispute**

During the 2014-2015 school year, Coffey-Sears shared a classroom with Matt Brod. Sharing this space proved difficult, and tensions strained the two teachers' working relationship. Indeed, in February of 2015 Brod confronted Coffey-Sears and told her, "You know you're the problem, you're always the problem with everyone in the department. They should see that you are the problem with everyone." (*Id.* ¶ 72.) Brod also asked Coffey-Sears, "How many times

does a schedule have to be re-done for the same person for them not to see who is the problem. It is always you." (*Id.*)

Eventually this tension came to a head. On April 7, 2015, Brod sent Coffey-Sears an email message asking her to keep students from her class from congregating near his desk while waiting for the bell to ring. Coffey-Sears told Brod that she would "inform the students about [his] feelings." (*Id.* ¶ 64.) In keeping this promise, Coffey-Sears made a handwritten sign, which she taped to the back of a chair with paper ribbons cordoning off the desk area. The sign read:

> Off Limits to ALL Students
> Do Not Stand Here
> Or Near Door
>     Per./Mr. Brod Request

(*Id.* ¶ 65.) On April 13, 2015, Brod sent an email to Division Chair Paula Nardi complaining of Coffey-Sears's behavior, specifically noting that her "approach restricts my access to the desk, makes my desk area look like a crime scene, and, in my opinion, puts kids in the middle of what should be an adult conversation." (*Id.* ¶ 66.) Eventually, both Brod and Coffey-Sears brought their issues with one another to the attention of Piotrowski, the Director of Human Resources. Piotrowski investigated their complaints and concluded that both teachers had acted unprofessionally. (*Id.* ¶ 67.) Afterwards, Piotrowski met separately with Coffey-Sears and Brod, and explained his determination. Piotrowski also told both Coffey-Sears and Brod that the District expected they would maintain professionalism in all interactions with District staff members. Piotrowski documented these meetings with memorandums to both Brod and Coffey-Sears. (*Id.* ¶ 68.)

**II.  Facts Regarding Alleged Retaliation Efforts**

**A.  Assessment Team**

Around the same time Coffey-Sears was negotiating the above-mentioned Sick Bank request, Assistant Principal Adam Davis met with Coffey-Sears to discuss her responsibilities on the Assessment Team. (*Id.* ¶ 63.) The Assessment Team is a subgroup of the District's Curriculum Team tasked with creating assessments that are in line with established curriculum requirements. (*Id.* ¶ 62.) Expressing concern about Coffey-Sears's medical condition, Davis asked her if she would like to step down from the Assessment Team and forego presenting at the January institute day. (*Id.* ¶ 63.) Coffey-Sears declined the offer. According to Coffey-Sears, after Davis heard she would remain on the team, he "looked as if he had a problem on his hands" because he appeared "stern" and was thinking. (*Id.*) Coffey-Sears assumes that he asked her to step down because of conversations he had with other teachers who did not want her on the team. (*Id.*) Coffey-Sears has remained on the Assessment Team. (*Id.*)

**B.  Rowdy Class**

Throughout the 2013-2014 school year, Coffey-Sears was dealing with a particularly "rowdy" class of students. The students in her class would flash gang signs, use inappropriate language, and throw clay. (*Id.* ¶ 74.) In one instance, security was called to escort a female student out of the classroom after the student threatened to punch Coffey-Sears. (AESDMS Ex. 2, Dkt. No. 27-2 at 14–15 of 110.) To Coffey-Sears's chagrin, the student was allowed to return to class for the next several days. (*Id.*) The student "remained very threatening" and Coffey-Sears eventually had security escort her out a second time. (*Id.*) Coffey-Sears believes the District purposefully put her in an unsafe position with this student in order to retaliate against her for filing a charge with the EEOC. (*Id.*; PRDSUF ¶ 74.)

## C.      Class Assignments

In March of 2015, Division Chair Paula Nardi sent the Fine Arts Division a Staffing Assignment Request form asking them to identify their preferred teaching assignments for the 2015-2016 school year. (PRDSUF ¶ 49.) The District assigns teachers to classes and sets teaching schedules based upon a variety of factors, including but not limited to class enrollment, available classroom space, availability of qualified teachers, and judgments about which assignments will be in the best interests of the students. While a teacher's preferences may be considered, they are not dispositive, and it is not unusual for teachers not to receive their preferred schedules or teaching assignments. (*Id.* ¶ 45.) In her Staffing Assignment Request form for the 2015-2016 school year, Coffey-Sears asked to teach Advanced Ceramics, 3D AP Art, and Advanced Drawing and Painting. (*Id.* ¶ 50.) In the section of the form asking teachers who teach at only one campus to identify at least one course at the other campus that they would like to teach, Coffey-Sears responded: "Due to my disability which is documented with supportive doctor's notes in Ed's office, I can't travel." Coffey-Sears also stated that she would need a lunch period beginning no later than 12:00 pm due to her medical condition. (*Id.*) Separately, Coffey-Sears informed Piotrowski that she needed a schedule that did not require her to move from one campus to the other at mid-year. (*Id.* ¶ 51.)

When preparing the 2015-2016 schedule, Nardi prioritized Coffey-Sears's accommodation requests, focusing on providing Coffey-Sears with a schedule that addressed her need for an earlier lunch, did not require her to travel between buildings during the day, and did not force her to switch campuses mid-year. (*Id.* ¶ 54.) Nardi ultimately assigned Coffey-Sears to teach five sections of Beginning Ceramics at the South Building each semester, a schedule that not only allowed Coffey-Sears to remain at the South Campus for the entire year, but also to stay

in the same classroom for the full school day. (*Id.*) While Coffey-Sears did not receive any advanced courses in her 2015-2016 schedule, in the 2016-2017 school year she was scheduled to teach Advanced Ceramics as well as AP 3D Studio Art. (*Id.* ¶ 61.)

## DISCUSSION

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When presented with a summary judgment motion, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). "In evaluating whether a genuine issue of material fact exists, all evidence and inferences must be viewed in the light most favorable to the nonmoving party." *Scott v. Edinburg*, 346 F.3d 752, 755 (7th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003)). "[A] court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255).

The ADA prohibits an employer from discriminating against qualified individuals on the basis of disability in job application procedures, the hiring of employees, and the advancement of employees. *See Majors v. General Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013). Coffey-Sears alleges that the District violated the ADA by denying her requests for reasonable accommodations and discriminating against her because of her disability (Count I), and

retaliating against her for bringing this lawsuit and subjecting her to a hostile work environment (Count II). The District argues, however, that they are entitled to summary judgment for four reasons: (1) a number of Coffey-Sears's claims are time-barred; (2) her remaining accommodation claims are baseless; (3) Coffey-Sears cannot establish unlawful retaliation; and (4) Coffey-Sears cannot show a hostile work environment. The Court addresses each of these arguments in turn below.

## I.    Time-Barred Claims

As a threshold issue, the District seeks summary judgment on several of Coffey-Sears's ADA claims on the ground that they are untimely.[1] A plaintiff in Illinois who wishes to bring an ADA claim in federal court must first file an administrative charge with the EEOC within 300 days of the alleged unlawful employment practice's occurrence. *See* 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); *Teague v. Nw. Mem'l Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012) ("A plaintiff in Illinois, a 'deferral state' because it has a state agency with enforcement powers parallel to those of the EEOC, must file a charge of discrimination with the EEOC within 300 days of some offending conduct."). An unlawful employment practice begins to run on the date of the discrete act of discrimination. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002). For example, refusal to accommodate is a discrete act for purposes of statute of limitations. *See Teague*, 492 F. App'x at 684. Alleged discriminatory acts that do not fall within the relevant 300-day period are generally untimely and cannot be considered by the Court. *See Fairchild v. Forma Scientific Inc.*, 147 F.3d 567, 574 (7th Cir. 1998).

---

[1] In her response, Coffey-Sears does not discuss the District's argument that several of her claims are untimely. Such a failure to respond indicates that Coffey-Sears has waived whatever arguments she might have raised. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Coffey-Sears filed her EEOC charge on November 17, 2014. Thus, counting 300 days

back from the date of Coffey-Sears's charge, the alleged adverse employment action had to

occur on or after January 21, 2014 in order for her claim based on that action to be timely. Given

this timeframe, four of Coffey-Sears's accommodation claims are fully time-barred:

- The District's request for medical documentation prior to granting Coffey-Sears an early lunch, which occurred on May 7, 2013;

- The Buildings and Grounds staff's failure to provide Coffey-Sears with assistance in rearranging her classroom, which occurred on August 17, 2013;

- The District's failure to designate a handicap parking spot for Coffey-Sears's personal use;[2] and

- The Fine Arts Division Chair's criticism of Coffey-Sears for not moving about the classroom and monitoring students, which Coffey-Sears objected to on October 22, 2013.

Since Coffey-Sears missed the 300-day deadline for each of these claims, they are untimely.[3]

Although Coffey-Sears may not recover for any pre-January 21, 2014 acts under the ADA, that

is not to say that such acts are irrelevant. Under the statute, Coffey-Sears may "us[e] the prior

---

[2] Defendants point to the discussion between Coffey-Sears and Piotrowski regarding the parking spot, which occurred in the summer of 2013, as the date when Coffey-Sears's accommodation request accrued. Since Coffey-Sears does not offer any alternative date for determining the limitations period, the Court accepts this accrual date.

[3] Even if these claims were not time-barred, the Court would have serious reservations as to their viability. For example, it is not unreasonable for an employer to ask for medical documentation as part of the interactive process. *See Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009) ("[O]ur cases have consistently held that disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor, before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation the employee requests."). With respect to her handicap parking and teacher-evaluation claims, Coffey-Sears does not allege that the District failed reasonably to accommodate her, just that they did not provide her preferred resolution to the issues, which is inadequate to prove an accommodation claim. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000) (Employers are "obligated to provide a qualified individual with a reasonable accommodation, not the accommodation he would prefer."). Finally, the Buildings and Grounds staff claim is likely not viable due to Coffey-Sears's seeming failure to engage in the interactive process. *See Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998) (both employer and employee must engage in the interactive process).

acts as background evidence in support of a timely claim." *National R.R. Passenger Corp.*, 536 U.S. at 113.

The District argues that Coffey-Sears's claims regarding restroom access and the hostile work environment are also time-barred. The Court disagrees. With regards to the restroom access claim, Coffey-Sears claims that the District failed to accommodate her need to use the restroom during class by not allowing her to use a male restroom or a de-commissioned bathroom, both of which were closer to her classroom. Any claim related to the de-commissioned bathroom is time-barred. By her own admission, Coffey-Sears requested use of the closed bathroom in May or June of 2013. (PRDSUF ¶ 21.) Coffey-Sears does not offer any alternative date for measuring the statute of limitations related to this claim, and therefore the Court accepts May or June of 2013 as the accrual date. As mentioned above, Coffey-Sears filed her EEOC charge on November 17, 2014 and thus any claim that occurred before January 21, 2014 is time-barred. What is not clear from the record, however, is when exactly Coffey-Sears requested access to the men's restroom. Consequently, in resolving all factual disputes in Coffey-Sears' favor, the Court assumes this claim is not time-barred.

As to the hostile work environment allegations, the statute of limitations for this kind of claim is more flexible than for accommodation claims. "An employee need only file an EEOC charge within 300 days of the last hostile act in a continuous and ongoing hostile work environment." *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). Hostile comments by fellow art teachers Carlene Kinzie and Matt Brod in 2014 and 2015 fall within the 300-day window. As such, Coffey-Sears's hostile work environment claim is not time-barred.

## II.    Failure to Accommodate Claims

The ADA provides that a covered employer shall not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discrimination" under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." § 12112(b)(5)(A). In sum, the ADA requires that employers reasonably accommodate disabled employees.

To establish a claim for failure to accommodate, a plaintiff must show that: "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).The third element outlined "requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *Baert*, 149 F.3d at 633. Both employer and employee are responsible for engaging in the interactive process, and each must make a good faith effort to determine what specific accommodations are necessary. *See Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir. 1996).

Coffey-Sears asserts that the District failed to provide her reasonable accommodations when it did not allow her to use a men's restroom closer to her classroom and did not give her paid leave beyond what was provided for by the union contract.

## A.    Restroom Access

Coffey-Sears argues that the District failed to accommodate her need to use the restroom during class by not allowing her to use a men's restroom, which was closer to her classroom. Instead, the District accommodated Coffey-Sears's restroom request by providing coverage for her class when she needed to use the bathroom during class time. During the 2013-2014 school year, Coffey-Sears used the restroom during class about once per month. On each occasion she was able to get another staff member to supervise her classroom while she used the bathroom. (PRDSUF ¶ 19.) As conceded by both parties, allowing Coffey-Sears to use the men's facility would require getting a male staff member to come to the bathroom with her each time she wanted to use the facilities. (*Id.* ¶ 22.) The male staff member would then have to check the bathroom to ensure it was empty before Coffey-Sears could use it. (*Id.*) Coffey-Sears admits that this would have been impractical as well as unnecessary given the availability of an accessible female restroom. (*Id.*)

Despite these issues, Coffey-Sears insists she would have preferred to use the men's bathroom. However, an employer is only "obligated to provide a qualified individual with a reasonable accommodation, not the accommodation he would prefer." *Rehling*, 207 F.3d at 1014; *see also Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) ("It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests."). Although she was dissatisfied with the accommodation the District offered, Coffey-Sears has not presented any evidence to explain why this accommodation was unreasonable. Was she unable to get up the stairs to access the women's restroom? Did other staff members express resentment about having to cover her class? Did going to the first floor cause her to miss too much class time? Ultimately, these questions are left

unanswered by Coffey-Sears. This failure to provide evidence of the unreasonableness of the District's accommodation sinks Coffey-Sears's claim. *See Beck*, 75 F.3d at 1136 (7th Cir. 1996) (affirming the district court's summary judgment order in favor of the employer where plaintiff "offer[ed] no evidence that the wrist rest, as compared to an adjustable keyboard, was an unreasonable accommodation of her osteoarthritis").

At most, Coffey-Sears's evidence shows that there was another alternative—the men's restroom. But Coffey-Sears admits this alternative was both impractical and unnecessary due to the availability of an accessible female restroom and staff members to cover her class. (PRDSUF ¶ 22.) Thus, overall, Coffey-Sears has failed to provide evidence sufficient to establish an accommodation claim.

### B.      Sick Bank

Coffey-Sears also asserts that the District's refusal to allow her to use the Sick Bank or to otherwise grant additional paid sick leave constitutes a failure to accommodate. The contract between the District and its teachers' union provides for a "Sick Leave Bank" to which participating teachers may contribute sick leave. Teachers can then draw upon sick leave contributed to the bank in the event of "catastrophic illness," defined as an illness that is "life threatening." (PRDSUF ¶ 39.) Teachers are permitted to draw from the Sick Leave Bank only once they have depleted their own sick days and been on unpaid status for five school days due to disability or illness. Employees who wish to use the Sick Leave Bank must submit a doctor's statement supporting their eligibility for days from the Bank. The Sick Leave Bank is administered by a joint committee appointed by the union and the administration. (*Id.*) Aside from the Sick Leave Bank, the District does not have any contract provision, policy, or practice

allowing for teachers to receive additional paid sick leave once they have exhausted their entitlements under the contract. (*Id.* ¶ 43.)

Under the ADA, reasonable accommodations may include "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). In analyzing "reasonable accommodations," courts generally agree that, in certain circumstances, providing medical leave may constitute a reasonable accommodation. *See Swanson v. Vill. of Flossmoor*, 794 F.3d 820, 827 (7th Cir. 2015) ("[P]ermitting an employee to use paid leave can constitute a reasonable accommodation."); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001) ("Undoubtedly, a short, one-week medical leave constitutes a reasonable accommodation in many circumstances."); *Basith v. Cook Cty.*, 241 F.3d 919, 932 (7th Cir. 2001) (agreeing with the district court's determination that medical leave of absence qualifies as a reasonable accommodation); *Soodman v. Wildman, Harrold, Allen & Dixon*, No. 95 C 3834, 1997 WL 106257, at *6 (N.D. Ill. Feb. 10, 1997) ("The ADA's legislative history, the Equal Employment Opportunity Commission's interpretive guidelines and case law addressing the issue make clear that one type of reasonable accommodation may be a temporary leave of absence to obtain necessary medical treatment.").

Similarly, the EEOC interpretive guidelines[4] state that "[p]ermitting the use of accrued paid leave, or unpaid leave, is a form of reasonable accommodation when necessitated by an employee's disability."  Equal Employment Opportunity Commission Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act,

---

[4] While the EEOC guidelines are not controlling law, they do present an "important body of experience and informed judgment entitled to some deference." *EEOC v. Flambeau, Inc.*, 846 F.3d 941, 948 (7th Cir. 2017) (internal quotation marks omitted).

2002 WL 31994335, at *14 (Oct. 17, 2002) (citing 29 C.F.R. § 1630.2(o) (1997)). However, "[a]n employer does not have to provide paid leave beyond that which is provided to similarly-situated employees." *Id.* The guidelines further state that employers should allow employees with disabilities to exhaust accrued paid leave first and then provide unpaid leave. *Id.* The Department of Labor has also weighed in on the issue, and in its regulations[5] state that a reasonable accommodation may require an employer "to grant liberal time off or leave without pay when paid sick leave is exhausted and when the disability is of a nature that it is likely to respond to treatment of hospitalization." 29 C.F.R. pt. 32, app. A(b) (specifically regarding programs receiving federal financial assistance).

Here, the District allowed Coffey-Sears to use all of her paid leave. After she had used all of her paid leave, Coffey-Sears took an additional 3.9 days off from work. Because Coffey-Sears had neither been on unpaid status for five days nor submitted the proper paperwork, she was not eligible to use the Sick Bank. Thus, the District gave her the 3.9 days as unpaid leave. The District provided Coffey-Sears with the same accommodations it would to any similarly-situated employee—*i.e.*, an employee who suffered a "catastrophic illness." While Coffey-Sears might have preferred to receive paid leave, she has not shown that the District's provision of 3.9 days of unpaid leave could be viewed as an unreasonable accommodation. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("Summary judgment is the 'put up or shut up' moment in a lawsuit."). Accordingly, the District is entitled to summary judgment on this claim.

## III.    Retaliation Claims

In addition to the accommodation claims, Coffey-Sears also argues that the District retaliated against her for asserting her rights under the ADA. The ADA prohibits employers from

---

[5] An administrative agency's reasonable interpretation of an ambiguous statute commands a significant amount of deference. *See Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984).

retaliating against employees who assert their right under the Act to be free from discrimination. 42 U.S.C. § 12203(a). "A plaintiff bringing a retaliation claim may present either direct evidence of discrimination or indirect evidence under the burden-shifting method . . . ." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). To establish retaliation under the direct method of proof a plaintiff must show a causal connection between her engagement in a statutorily protected activity and an adverse action she suffered. *See Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). A plaintiff can use either direct or circumstantial evidence to meet her burden under the direct method. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 307 (7th Cir. 2012). Using the indirect method of proof, a plaintiff must establish "a *prima facie* case of discrimination by showing that (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." *Dickerson*, 657 F.3d at 601. Once a plaintiff establishes this *prima facie* case, the burden shifts to defendant "to present a non-invidious reason for the adverse employment action." *Id.*

An element of both the direct and indirect methods of proof is an adverse employment action. This action "must be materially adverse to be actionable, meaning more than a mere inconvenience or an alteration of job responsibilities." *Kersting*, 250 F.3d at 1115 (internal quotation marks omitted). "The standard for a materially adverse action sufficient for a retaliation claim is somewhat more forgiving than for a discrimination claim, but the action must be severe enough to dissuade a reasonable employee from exercising statutory rights." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 456 (7th Cir. 2011). Material adverse employment may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). Notably, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an . . . employee did not like would form the basis of a discrimination suit." *Kersting*, 250 F.3d at 1115 (alteration in original) (internal quotation marks omitted).

Here, Coffey-Sears utilizes the indirect method of proof in attempting to make out her ADA retaliation claim. In support of her claim, Coffey-Sears points to four decisions by the District that allegedly constitute adverse employment actions:

- Coffey-Sears was not assigned to teach any advanced or Advanced Placement courses during the 2015-2016 school year despite her requests;

- Assistant Principal Adam Davis asked if Coffey-Sears would prefer to step down from the District's Assessment Team because of her medical issues;

- The District allowed a student to return to class after she threatened to punch Coffey-Sears; and

- Piotrowski issued a memorandum directing her to behave in a professional manner towards fellow art-teacher, Matt Brod.[6]

These incidents fail to establish a *prima facie* case of discrimination. The first three events listed above simply do not constitute a materially adverse employment action. Teachers receive no extra pay or other benefits for teaching AP or Advanced courses, and Coffey-Sears experienced no material detriment to her career as a result of teaching other courses. (PRDSUF ¶ 46.) Indeed, Coffey-Sears was assigned to teach both Advanced Ceramics and AP 3D Studio Art the very next year. Any preference Coffey-Sears may have had for teaching the AP and Advanced

---

[6] Coffey-Sears originally raised the Matt Brod dispute as an accommodation claim. However, she did not provide any evidence of how this dispute related to a request for reasonable accommodation. In an effort to view all evidence in the light most favorable to the plaintiff, the Court construes the Matt Brod dispute as a retaliation claim.

courses during the 2015-2016 year was purely subjective. Failure to accommodate purely subjective preferences does not warrant judicial intervention.

Similarly, there is no extra compensation or benefit associated with the Assessment Team position and there is no evidence that stepping down from the committee would have affected the terms and conditions of Coffey-Sears's employment. (PRDSUF ¶ 62.) Most importantly, Coffey-Sears actually remained on the Assessment Team. Her position never changed. The mere suggestion that she consider stepping down from the Assessment Team is insufficient to support a claim of retaliation.

Coffey-Sears's evidence regarding the threatening student also fails to establish a *prima facie* case of retaliation. Coffey-Sears alleges the District retaliated against her because a student who threatened to punch her was allowed "to return to class for the next several days." (AESDMS Ex. 2, Dkt. No. 27-2 at 15 of 110.) However, Coffey-Sears's own statement admits that the threatening student was only in her class for a couple of days. This short time period belies any argument that the action was severe enough to dissuade Coffey-Sears from exercising her statutory rights.

Finally, the Court turns to the memorandum issued by Piotrowski. Even if this action did qualify as a materially adverse event, Coffey-Sears's retaliation claim is undermined by the fact that a similarly-situated, non-disabled teacher got the same treatment as Coffey-Sears. Matt Brod, a fellow-art teacher at the same school, was reprimanded in exactly the same way as Coffey-Sears—*i.e.*, both received memorandums stating that they had acted unprofessionally towards one another and outlining the District's expectations going forward. There is no evidence in the record that Brod has a disability. Thus, the evidence contradicts any notion that "similarly situated employees without a disability were treated more favorably" than Coffey-

Sears. *Dickerson*, 657 F.3d at 601. Since Coffey-Sears has failed to prove this point, her *prima facie* case of retaliation based on the Piotrowski memorandum fails as well.

## IV.     Hostile Work Environment Claims

Lastly, Coffey-Sears contends that she was subject to a hostile environment after she requested a change to the teaching schedule to accommodate an earlier lunch. Specifically, Coffey-Sears alleges that she was harassed by teachers blaming her for changes to the teaching schedule.

"Hostile work environment claims are typically associated with sexual harassment rather than disability claims." *Silk v. City of Chicago*, 194 F.3d 788, 803 (7th Cir. 1999). Indeed, the Seventh Circuit has "not decided whether allowing a hostile work environment is actionable under the ADA." *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009). Without deciding the issue, this Court shall proceed on the assumption that a hostile work environment claim is cognizable under the ADA.

To prove such a claim, Coffey-Sears must follow the methodology already established in the parallel area of Title VII litigation. *See Silk*, 194 F.3d at 804. "Surviving summary judgment on a hostile work environment claim requires sufficient evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). The third element of the *prima facie* case for hostile work environment "is in the disjunctive—the conduct must be *either* severe *or* pervasive." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011), *aff'd*, 133 S. Ct. 2434 (2013) (emphasis in original). This means that "one extremely serious act of harassment could rise to an actionable level as could a

series of less severe acts." *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013) (quoting *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001)). A court addressing this element must consider "factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss*, 816 F.3d at 920.

Notably, however, the law "does not prohibit all verbal or physical harassment in the workplace." *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998). As such, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Silk*, 194 F.3d at 807 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted). A workplace rises to the level of an objectively hostile work environment only if it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014).

Applying the above standard, the Seventh Circuit affirmed a grant of summary judgment for the defendant in *Silk v. City of Chicago* on a disability-based hostile work environment claim. *See Silk*, 194 F.3d at 808. There, the plaintiff, a police officer, received a modified work shift from his employer to accommodate his sleep apnea. *Id.* at 795. The plaintiff claimed that after receiving the accommodation, he was verbally harassed by other officers, including being called a "useless piece of [vulgarity]" and a "limited duty phony"; was given negative performance reviews; and was punished through such sanctions as being sent home to get his regulation shoes. *Id.* at 805–06. The Seventh Circuit held that this conduct "did not rise to the level of a hostile work environment." *Id.* at 808.

The harassing actions alleged by Coffey-Sears are less severe and pervasive than the conduct in *Silk*. Coffey-Sears recounts a handful of incidents in which teachers blamed her for the schedule change in 2013. Coffey-Sears contends that teachers said things like "Why do they have to be changed for you?," "Well, why is this happening?," and "Everything centers around you. Why should it be that way?" Notably, these comments were made by coworkers, not supervisors. Even considering these combative coworker comments along with the other allegations, the picture Coffey-Sears paints is not one of severe or pervasive hostility but of common workplace disputes. Further, none of these incidents culminated in a tangible employment action. To the contrary, Coffey-Sears received an overall "proficient" rating for the 2013-2014 year, the highest rating given to any teacher that year. Taken all together, Coffey-Sears's alleged mistreatment is not sufficiently severe and pervasive to create an abusive working environment. Accordingly, the Court grants the District's summary judgment motion with regards to the hostile work environment claim as well.

## CONCLUSION

For the foregoing reasons, the District's motion for summary judgment (Dkt. No. 25) is granted in its entirety.

ENTERED:

Dated:  March 31, 2017

Andrea R. Wood
United States District Judge